[Civ. No. 2845. First Appellate District, Division One.—July 8, 1919.]

C. V. ROUSH, Appellant, v. J. A. KIRKMAN et al., Defendants, Cross-complainants and Respondents; E. H. MILLER et al., Cross-defendants and Appellants.

[1] REFORMATION OF INSTRUMENTS — INTENT OF PARTIES — ADMISSIBILITY OF PAROL EVIDENCE.—In revising a written instrument, the court may inquire what the instrument was intended to mean and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be; and evidence of the purpose of the agreement, and of the negotiations leading up to its execution, is admissible for the purpose of showing what the parties intended.

[2] ID.—CONTRADICTORY EVIDENCE — APPEAL — REVERSAL.—While the evidence making out the mistake in an action to reform a contract on the ground of mutual mistake must be clear and convincing, where the evidence which tends to prove the mistake, standing alone, uncontradicted, is sufficiently clear and convincing, the appellate court cannot reverse the judgment of the trial court on the ground that such evidence is contradicted by other evidence.

[3] Id.—Action on Note — Reformation of Contemporaneous Contract—Payment by Agent—Evidence—Judgment.—In this action on a promissory note by an alleged assignee, the defendants having by cross-complaint set up a cause of action for the reformation of a contract made contemporaneously with the execution of the note, and having alleged payment of the note in accordance therewith by the parties named as cross-defendants, the court, having found that the money paid by the plaintiff to his assignee for the note was paid by him as the agent of one of the cross-defendants, who was jointly liable on the note as guarantor, was correct in holding that the transaction amounted to payment under, and in accordance with, the terms of the reformed contract.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harris & Harris for Appellants.

Short & Sutherland for Respondents.

WASTE, P. J.—Plaintiff brought this action to collect a note for three thousand dollars, made by the defendants, who are engaged in the nursery business, to the First National Bank of Sanger, and which note was by the bank assigned to plaintiff. Defendants, answering, admitted the execution of the note, and alleged that the note, as delivered, contained on its back a guaranty of payment by the cross-defendants, E. H. Miller and Herbert Askin. Defendants deny that the bank sold, assigned, or delivered the note to plaintiff, or delivered the same to any other person than Miller, or Askin; deny that the plaintiff owns the note, and likewise deny that the note is unpaid, alleging that it has been fully paid by Miller and Askin.

By cross-complaint, by which said Miller and Askin are made cross-defendants, the defendants allege the making of an agreement of even date with the note, between themselves and the said Miller and Askin. In the agreement, which is set out in full, it is recited that the said cross-complainants are in need of certain money to carry on their nursery business; that said defendants and cross-complainants · will obtain three thousand dollars for that purpose from the First National Bank of Sanger, by means

of the promissory note in litigation here, a copy of the note, together with the guaranty by Miller and Askin being set up in the agreement; that, in consideration of the guaranty by Miller and Askin, defendants and cross-complainants agree to furnish "free gratis" to Miller and Askin two thousand trees of any variety which they may choose, then growing in the nursery of defendants and cross-complainants. In the event the nursery people have no available funds with which to dig and properly deliver the trees to Miller and Askin, the agreement continues, Miller and Askin are to advance the same. Furthermore, in case the latter advance any money for payment of interest on the note, they "shall, at their option, select from said nursery stock, so many trees as may be equivalent to the amount of money so advanced by them, allowing" the nursery people, defendants and cross-complainants, twenty cents (20c) per tree for each and every tree selected and taken by said parties, as therein provided. There is another stipulation to the effect that if the nursery people pay the note Miller and Askin shall be entitled to receive, and shall receive, two thousand trees only, and shall have the option of purchasing more trees for their personal use at a stipulated sum. It is agreed that if Miller and Askin are unable to accept the trees, the nursery people may continue to care for them until such time as, prior to August 1, 1916, Miller and Askin pay the sum of sixty dollars per thousand therefor. The latter are also given the right, on default of the nursery people, to enter the premises and select and secure the trees to which they may be entitled.

After setting forth the contract, the cross-complainants allege that it was the agreement of the parties, and that they intended that the agreement should mean, and its legal consequences be, that if Miller and Askin should advance any sums of money for the payment of the interest accrued, or the principal of the note, or for the digging and delivery of the trees, they "should reimburse themselves for such payment by selecting from the nursery stock of the cross-complainants so many trees as should be equivalent to the amount of money so advanced by them, at the rate of twenty cents per tree for each and every tree selected by the cross-defendants (Miller and Askin), and that the cross-defendants should be entitled to reim-

bursement for moneys so advanced in the manner above stated, and in no other manner; . . . that the cross-defendants should reimburse themselves for all payments made to the First National Bank of Sanger on account of the promissory note, described in the agreement, or advanced to the cross-complainants as therein provided, only by the selection of nursery stock then and there owned by the cross-complainants as recited in the agreement; that the only option, or choice, intended to be given to the cross-defendants by said agreement was the option to select the varieties or kinds of trees to be taken"; that the words "at their option," hereinbefore quoted in referring to the agreement as pleaded, should have been omitted therefrom. The answers to the cross-complaint do not deny the execution of the agreement relative to the guaranty, but deny the alleged mutual mistake.

The trial court reformed the contract in accordance with the prayer of the cross-complaint. It found that the note was executed and delivered to the bank, bearing the indorsement and guaranty of Miller and Askin, in conformity with the real agreement of the parties; further, that Miller and Askin paid the same after maturity, and thereupon became entitled to select trees from the cross-complainants' nursery stock, which trees defendants have always been ready to and have offered to deliver. This appeal is by the plaintiff and the cross-defendants, Miller and Askin, from the judgment entered in favor of the defendants in accordance with the findings. Appellants claim, first, that the evidence does not show a mutual mistake.

[1] "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be." (Civ. Code, sec. 3401.) Evidence of the purpose of the agreement, and of the negotiations leading up to its execution, is admissible for the purpose of showing what the parties intended. (*Owsley* v. *Matson*, 156 Cal. 401, [104 Pac. 983]; *Horton* v. *Winbigler*, 175 Cal. 150, [165 Pac. 423].) From the testimony quoted by the appellants in their opening brief it appears that respondents, J. L. Kirkman and J. A. Kirkman, W. M. Barr, cashier of the First National Bank of

Sanger, to whom the parties went to negotiate the loan, and who was first requested to draw the contract, and Monte Kirkman, son of one of the respondents, each testified that the contract intended by all the parties to be executed was the contract as found and reformed by the court. In opposition to their evidence, we find only the testimony of Mr. Miller, one of the cross-defendants. His more or less positive denial as to the intention of the parties raised merely a contradiction in the evidence, which was passed upon by the trial court. [2] It is true, as argued by appellant, that the evidence making out the mistake to the satisfaction of the court must be clear and convincing. "But, where the evidence, which tends to prove fraud or mistake, if standing alone, uncontradicted, is sufficiently clear and convincing, we cannot reverse the judgment on the ground that such evidence is contradicted by other evidence, because the right to pass upon the credibility of witnesses is not vested in this court. The only question which we have to decide in respect to the sufficiency of the evidence is whether that which tends to prove the alleged fraud or mistake, if standing alone, without contradiction, would make out a *prima facie* case." (*De Jarnatt* v. *Cooper*, 59 Cal. 703.) "Where the very issue in the action is the mutuality of the mistake, the trial court is compelled to decide upon conflicting evidence, and if a mere denial of the defendant that he was mistaken is to suffice, it must result in every case that where such denial is made, the plaintiff fails of relief. Such . . . however, is not the law." (*Home & Farm Co.* v. *Freitas,* 153 Cal. 685, [96 Pac. 310].)

It appears that at no time prior to the execution of the contract were all the parties thereto together. Appellant asserts, therefore, that since no contract was made before the date upon which the parties signed the written contract, there could have been no mistake, as claimed by defendants, and furthermore, that the evidence of the mutuality of the mistake must relate to the time of the execution of the instrument. This contention has been decided adversely to appellant. (*Sullivan* v. *Moorhead,* 99 Cal. 157, [33 Pac. 796].)

[3] The trial court found that the plaintiff Roush acted as the agent of Miller and Askin for the purpose of pay-

ing the note. The circumstances, briefly, under which the bank was paid, were: In the fall of 1915, which was after the maturity of the note, Miller, one of the guarantors, and cross-defendants, asked plaintiff to "buy the note for him," telling plaintiff where the note was. Plaintiff stated he would do so provided Miller "would guarantee I [plaintiff] would not lose anything on it." This Miller did, and plaintiff went to the First National Bank of Sanger and gave his personal check for three thousand three hundred dollars to the bank, and recovered the note, which was indorsed on the back, "Pay to the order of C. V. Roush without recourse on us. First National Bank of Sanger, by W. D. Mitchell, President." Plaintiff further testified that he bought the note at the request of Miller, and that the latter did not agree to repay, and had not repaid, the money he paid for it. The testimony of Roush to the effect that he bought the note "for," Miller and "at his request" is uncontradicted, and supports the court's finding as to plaintiff's agency.

The lower court found that the bank did not sell or deliver the note to plaintiff and that the note has been fully paid by the cross-defendants Miller and Askin, by and through plaintiff, as their agent, and that such payment was made in conformity with the guaranty and contract hereinbefore set out. Appellant's contention in this regard is that, even under the agreement, as reformed, Miller and Askin agreed to take their pay in trees, only, if they paid the note, that they were not payors or makers of the note, but were merely guarantors of performance by the respondents, who were the sole makers, that Miller and Askin were liable on their guaranty and not on the note; that even though plaintiff was agent for Miller, the latter had the right to buy the note and proceed against the respondents for collection. We do follow appellants so far. The contract was not between the bank and Miller and Askin, but between the latter and respondents. The question of liability to the bank was not involved in the agreement. The real subject matter of the agreement was what should be done in the event Miller and Askin advanced any sums of money for or on behalf of respondents, for the payment of the account of interest which might accrue

on the note, principal thereof, or the digging and delivery of the trees.

The court having found that the money paid to the First National Bank of Sanger by plaintiff for the note was paid by him as the agent of Miller, one of the parties jointly liable on the guaranty, was correct in holding that the transaction amounted to a payment under, and in accordance with, the terms of the reformed contract.

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.